**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | |
|---|---|
| INTERSTATE PATENTS, LLC, | CIVIL ACTION NO. 7:26-cv-55 |
| Plaintiff, | ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT |
| v. | **JURY TRIAL DEMANDED** |
| KNIGHT-SWIFT TRANSPORTATION HOLDINGS INC. and KNIGHT TRANSPORTATION, INC., | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Interstate Patents, LLC ("Interstate Patents" or "Plaintiff") files this original complaint against Defendants Knight-Swift Transportation Holdings Inc. and Knight Transportation, Inc. (collectively "Knight-Swift" or "Defendants"), alleging, based on its own knowledge as to itself and its own actions and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This action concerns Knight-Swift's infringement of the following United States Patents (the "Asserted Patents"):

| U.S. Patent No. | Title |
|---|---|
| RE44,797 | Apparatus, Method and Computer Program Product Providing User Equipment Operation by Considering Scheduling Information With Regard to the Use of Relative Grants |
| 8,605,864 | Systems and Methods for Providing 9-1-1 Services to Nomadic Internet Telephony Callers |

| 7,639,943 | Computer-Implemented System and Method for Automated Image Uploading and Sharing From Camera-Enabled Mobile Devices |
| 7,557,689 | Alerting Method, Apparatus, Server, and System |
| 7,460,737 | Method and Apparatus for Photograph Finding |
| 7,388,848 | Method and Apparatus for Transport Format Signaling With HARQ |
| 7,251,535 | Location Based Diagnostics Method and Apparatus |

## **PARTIES**

2.      Interstate Patents is a limited liability company formed under the laws of the State of Texas, with its principal place of business at 1909 Lohman Ford Road, Lago Vista, TX 78645.

3.      Knight-Swift Transportation Holdings Inc. is a company duly organized and existing under the laws of Delaware.  Knight-Swift Transportation Holdings Inc. may be served through its registered agent National Registered Agents, Inc. at 1209 Orange Street, Wilmington, Delaware, 19801.

4.      Knight Transportation, Inc. is a company duly organized and existing under the laws of Arizona. Knight Transportation, Inc. may be served through its registered agent CT Corporation System at 1999 Bryan Street. Suite 900, Dallas, Texas 75201.

5.      The Defendants identified in paragraphs 3-4 above are part of an interrelated group of companies which together comprise one of the world's largest transportation companies.  Knight-Swift describes itself as "North America's largest full truckload company" and is "an industry leader in growth, profitability, culture, and innovation."[1]

---

[1] *See* https://www.knighttrans.com/about-us/

6.     The Knight-Swift defendants named above and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally and this judicial district in particular.

7.     The Knight-Swift defendants named above and their affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused product lines and products involving related technologies.

8.     The Knight-Swift defendants named above and their affiliates regularly contract with customers regarding products made for or on behalf of those customers.

9.     Thus, the Knight-Swift defendants named above and their affiliates operate as a unitary business venture and are jointly and severally liable for the acts of patent infringement alleged herein.

10.    The parties to this action are properly joined under 35 U.S.C. § 299 because the right to relief asserted against Defendants jointly and severally arises out of the same series of transactions or occurrences relating to the making and using of the same products or processes, including trucking and logistics technologies and related processes bearing at least Knight-Swift brands or that are otherwise made for use with services provided by Knight-Swift.  Additionally, questions of fact common to all defendants will arise in this action.

## JURISDICTION AND VENUE

11.    This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

12.    This Court has personal jurisdiction over Knight-Swift pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Knight-Swift has done and continues

3

to do business in Texas; and (ii) Knight-Swift has committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and/or sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein; and (iii) Knight-Swift Transportation Holdings Inc. and Knight Transportation, Inc. are registered to do business in Texas.

13.     Venue is proper in this district as to Knight-Swift pursuant to 28 U.S.C. § 1400(b).  Venue is further proper because Knight-Swift has committed and continues to commit acts of patent infringement in this district, including making, using, offering to sell, and/or selling accused products in this district, and/or importing accused products into this district, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in this district, and/or committing at least a portion of any other infringements alleged herein in this district.  Knight-Swift has regular and established places of business in this district, including at least at 1101 Southview Drive, El Paso, Texas 79928.[2]

---

[2] *See* https://www.knighttrans.com/locations/el-paso-tx/



Site: https://www.knighttrans.com/locations

14.     Knight-Swift employs or otherwise controls individuals that work from these places of business in this district, and Knight-Swift's business specifically depends on such persons being physically present at such places to, for example, support Knight-Swift's customers.

<strong><u>THE ACCUSED PRODUCTS</u></strong>

15.     Knight-Swift owns, operates, advertises, and/or controls products and services that include and/or use systems and/or methods provided by Zonar Systems, Inc. and/or its agents ("Zonar").  *See* Exhibit A.

16.     Knight-Swift's relationship with Zonar spans more than a decade.  In 2015, Knight Transportation selected the Zonar 2020 Mobile Tablet as its new telematics platform to modernize its fleet operations.  In 2021, following the 2017 merger of Knight Transportation and

Swift Transportation, Knight-Swift "selected Zonar as its preferred smart fleet management solution provider for its expanded truck fleet." *See* Exhibit A.

17.     Knight-Swift uses, causes to be used (including by contracting with Zonar to perform specified tasks on its behalf), sells, offers for sale, provides, supplies, and/or distributes fleet management and tracking solutions and similar products utilizing systems and/or methods provided by Zonar, including, but not limited to, the Zonar Ignition fleet operations platform (successor to and inclusive of the Zonar Ground Traffic Control platform), the Zonar V4 Telematics Control Unit ("TCU"), the Zonar Electronic Verified Inspection Reporting ("EVIR") system, Zonar Coach driver coaching platform, Zonar Fleet Telematics, Zonar ZAlerts, Zonar Dashcam, Zonar Mobile Tablet, Zonar Electronic Logging Device ("ELD") system, and other substantially similar products and services offered in the past or the future, and all prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").  *See* Exhibit A; *see also* Exhibits 1-7.

18.     Using the Accused Products, Knight-Swift tracks, analyzes, and reports vehicle locations, vehicle maintenance needs, and driver behavior associated with its fleet vehicles, receives and manages real-time alerts for vehicle and driver events, monitors and coaches driver safety through integrated dashcam video, and allows for communication between fleet managers and remote in-vehicle units—including, for example, advisory notifications and diagnostic data transmissions.  *See* Exhibit A.

19.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

<u>**COUNT I**</u>
<u>**DIRECT INFRINGEMENT OF U.S. REISSUED PATENT NO. RE44,797**</u>

20.     On March 11, 2014, United States Reissued Patent No. RE44,797 ("the '797 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Apparatus, Method and Computer Program Product Providing User Equipment Operation by Considering Scheduling Information With Regard to the Use of Relative Grants."

21.     Interstate Patents is the owner of the '797 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '797 Patent against infringers, and to collect damages for all relevant times.

22.     Knight-Swift made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its Zonar V4 TCU and Zonar Ignition/Ground Traffic Control products that utilize 3G technology.

23.     By doing so, Knight-Swift has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 53 of the '797 Patent. *See* Exhibit 1. Knight-Swift's infringement in this regard is ongoing.

24.     Knight-Swift's Zonar V4 TCU is an exemplary accused product.

25.     Zonar has marketed the benefits of 3G to its customers, and has touted its products having "[b]uilt-in 4G and 3G radios provide you with nationwide coverage." According to Zonar, "[n]o matter where your business takes you, we'll keep you connected and your data moving."[3]

---

[3] *See* https://www.zonarsystems.com/solutions/v4-telematics-device/

26.     Knight-Swift directly infringes the '797 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products.  Knight-Swift also directly infringes the '797 Patent when the accused products are used after purchase by a customer or end user.  For example, the accused products are built with hardware and/or software components that control the operation of the accused products.  These components cause the accused products to perform the steps of the claimed invention after, for example, receiving a transmitted message.  Knight-Swift also directly infringes the '797 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., Zonar, certification/testing providers), and/or its customers and end-users.  Knight-Swift contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved wireless communications) from doing so.  Knight-Swift conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., after receiving a transmitted message).

27.     Knight-Swift has had knowledge of the '797 Patent at least as of the date when it was notified of the filing of this action.

28.     Interstate Patents has been damaged as a result of the infringing conduct by Knight-Swift alleged above.  Thus, Knight-Swift is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

29.     Interstate Patents has neither made nor sold unmarked articles that practice the '797 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '797 Patent.

## COUNT II
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,605,864

30.     On December 10, 2013, United States Patent No. 8,605,864 ("the '864 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Systems and Methods for Providing 9-1-1 Services to Nomadic Internet Telephony Callers."

31.     Interstate Patents is the owner of the '864 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '864 Patent against infringers, and to collect damages for all relevant times.

32.     Knight-Swift made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its Zonar Fleet Telematics and Zonar Ignition/Ground Traffic Control products that infringe the '864 Patent.

33.     By doing so, Knight-Swift has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '864 Patent.  *See* Exhibit 2.

34.     Knight-Swift's Zonar Fleet Telematics product is an exemplary accused product.

35.     Knight-Swift directly infringed the '864 Patent when, for example, it and/or its agents used the accused products, including during testing of the accused products.  Knight-Swift also directly infringed the '864 Patent when the accused products were used after purchase by a customer or end user.  For example, the accused products are built with hardware and/or software components that control the operation of the accused products.  These components cause the accused products to perform the steps of the claimed invention after, for example,

receiving information indicative of an emergency call.  Knight-Swift also directly infringed the

'864 Patent by exercising direction or control over the use of the accused products by others,

including its affiliates, its subsidiaries, its business partners (e.g., Zonar, certification/testing

providers), and/or its customers and end-users.  Knight-Swift contracted with, advised, and/or

encouraged such persons to engage in conduct satisfying one or more elements of the asserted

claims, deriving a financial or other benefit (e.g., improved emergency call services) from doing

so.  Knight-Swift conditioned these benefits on, for example, such persons performing certain

activities involving the accused products during specified conditions that cause the accused

products to perform the steps of the claimed method (e.g., after receiving information indicative

of an emergency call).

36.    Knight-Swift has had knowledge of the '864 Patent at least as of the date when it

was notified of the filing of this action.

37.    Interstate Patents has been damaged as a result of the infringing conduct by

Knight-Swift alleged above.  Thus, Knight-Swift is liable to Interstate Patents in an amount that

adequately compensates it for such infringements, which, by law, cannot be less than a

reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

38.    Interstate Patents has neither made nor sold unmarked articles that practice the

'864 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for

infringement of the '864 Patent.

## <u>COUNT III</u>
## <u>DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,639,943</u>

39.    On December 29, 2009, United States Patent No. 7,639,943 ("the '943 Patent")

was duly and legally issued by the United States Patent and Trademark Office for an invention

entitled "Computer-Implemented System and Method for Automated Image Uploading and

Sharing From Camera-Enabled Mobile Devices."

40.    Interstate Patents is the owner of the '943 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '943 Patent against infringers, and to collect damages for all relevant times.

41.    Knight-Swift made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its Zonar Coach and Zonar Ignition/Ground Traffic Control products that infringe the '943 Patent.

42.    By doing so, Knight-Swift has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '943 Patent. *See* Exhibit 3. Knight-Swift's infringement in this regard is ongoing.

43.    Knight-Swift's Zonar Coach product is an exemplary accused product.

44.    Knight-Swift directly infringes the '943 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products. Knight-Swift also directly infringes the '943 Patent when the accused products are used after purchase by a customer or end user. For example, the accused products are built with hardware and/or software components that control the operation of the accused products. These components cause the accused products to perform the steps of the claimed invention after, for example, receiving a plurality of images. Knight-Swift also directly infringes the '943 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., Zonar, certification/testing providers), and/or its customers and end-users. Knight-Swift contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved processing of images without user action)

11

from doing so.  Knight-Swift conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., after receiving a plurality of images).

45.    Knight-Swift has had knowledge of the '943 Patent at least as of the date when it was notified of the filing of this action.

46.    Interstate Patents has been damaged as a result of the infringing conduct by Knight-Swift alleged above.  Thus, Knight-Swift is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

47.    Interstate Patents has neither made nor sold unmarked articles that practice the '943 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '943 Patent.

## COUNT IV
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,557,689

48.    On July 7, 2009, United States Patent No. 7,557,689 ("the '689 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Alerting Method, Apparatus, Server, and System."

49.    Interstate Patents is the owner of the '689 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '689 Patent against infringers, and to collect damages for all relevant times.

50.    Knight-Swift made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its Zonar ZAlerts and Zonar Ignition/Ground Traffic Control products that infringe the '689 Patent.

51.    By doing so, Knight-Swift has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 20 of the '689 Patent.  *See* Exhibit 4.  Knight-Swift's infringement in this regard is ongoing.

52.    Knight-Swift's Zonar ZAlerts product is an exemplary accused product.

53.    Knight-Swift directly infringes the '689 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products.  Knight-Swift also directly infringes the '689 Patent when the accused products are used after purchase by a customer or end user.  For example, the accused products are built with hardware and/or software components that control the operation of the accused products.  These components cause the accused products to perform the steps of the claimed invention after, for example, receiving requests to issue alerts.  Knight-Swift also directly infringes the '689 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., Zonar, certification/testing providers), and/or its customers and end-users.  Knight-Swift contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved alert management) from doing so.  Knight-Swift conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., receiving requests to issue alerts).

54.    Knight-Swift has had knowledge of the '689 Patent at least as of the date when it was notified of the filing of this action.

55.    Interstate Patents has been damaged as a result of the infringing conduct by Knight-Swift alleged above.  Thus, Knight-Swift is liable to Interstate Patents in an amount that

adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

56.     Interstate Patents has neither made nor sold unmarked articles that practice the '689 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '689 Patent.

**COUNT V**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,460,737**

57.     On December 2, 2008, United States Patent No. 7,460,737 ("the '737 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Method and Apparatus for Photograph Finding."

58.     Interstate Patents is the owner of the '737 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '737 Patent against infringers, and to collect damages for all relevant times.

59.     Knight-Swift used products and/or systems including, for example, its Zonar Coach and Zonar Ignition/Ground Traffic Control products that infringe the '737 Patent.

60.     By doing so, Knight-Swift has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '737 Patent.  *See* Exhibit 5.  Knight-Swift's infringement in this regard is ongoing.

61.     Knight-Swift's Zonar Coach product is an exemplary accused product.

62.     Knight-Swift directly infringes the '737 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products.  Knight-Swift also directly infringes the '737 Patent when the accused products are used after purchase by a customer or end user.  For example, the accused products are built with hardware and/or software components that control the operation of the accused products.  These components

14

cause the accused products to perform the steps of the claimed invention after, for example, receiving requests to search digital image data. Knight-Swift also directly infringes the '737 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., Zonar, certification/testing providers), and/or its customers and end-users. Knight-Swift contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved distribution of image data) from doing so. Knight-Swift conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., receiving requests to search digital image data).

63.    Knight-Swift has had knowledge of the '737 Patent at least as of the date when it was notified of the filing of this action.

64.    Interstate Patents has been damaged as a result of the infringing conduct by Knight-Swift alleged above. Thus, Knight-Swift is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

65.    Interstate Patents has neither made nor sold unmarked articles that practice the '737 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '737 Patent.

## COUNT VI
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,388,848

66.    On June 17, 2008, United States Patent No. 7,388,848 ("the '848 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Method and Apparatus for Transport Format Signaling With HARQ."

67.    Interstate Patents is the owner of the '848 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '848 Patent against infringers, and to collect damages for all relevant times.

68.    Knight-Swift made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems including, for example, its Zonar telematics control unit and Zonar Ignition/Ground Traffic Control products that utilize 4G LTE technology.

69.    By doing so, Knight-Swift has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '848 Patent.  *See* Exhibit 6.  Knight-Swift's infringement in this regard is ongoing.

70.    Knight-Swift's Zonar V4 TCU is an exemplary accused product.

71.    Zonar has marketed the benefits of LTE to its customers, and has touted its products having "[b]uilt-in 4G and 3G radios provide you with nationwide coverage." According to Zonar, "[n]o matter where your business takes you, we'll keep you connected and your data moving."[4]

72.    Knight-Swift directly infringes the '848 Patent when, for example, it and/or its agents use the accused products, including during testing of the accused products.  Knight-Swift also directly infringes the '848 Patent when the accused products are used after purchase by a

---

[4] *See* https://www.zonarsystems.com/solutions/v4-telematics-device/

customer or end user.  For example, the accused products are built with hardware and/or software components that control the operation of the accused products.  These components cause the accused products to perform the steps of the claimed invention after, for example, receiving a current transmission that includes a predetermined bit pattern.  Knight-Swift also directly infringes the '848 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., Zonar, certification/testing providers), and/or its customers and end-users.  Knight-Swift contracts with, advises, and/or encourages such persons to engage in conduct satisfying one or more elements of the asserted claims, deriving a financial or other benefit (e.g., improved wireless communications) from doing so.  Knight-Swift conditions these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., after receiving a current transmission that includes a predetermined bit pattern).

73.    Knight-Swift has had knowledge of the '848 Patent at least as of the date when it was notified of the filing of this action.

74.    Interstate Patents has been damaged as a result of the infringing conduct by Knight-Swift alleged above.  Thus, Knight-Swift is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

75.    Interstate Patents has neither made nor sold unmarked articles that practice the '848 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '848 Patent.

## COUNT VII
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 7,251,535

76.     On July 31, 2007, United States Patent No. 7,251,535 ("the '535 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Location Based Diagnostics Method and Apparatus."

77.     Interstate Patents is the owner of the '535 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '535 Patent against infringers, and to collect damages for all relevant times.

78.     Knight-Swift used products and/or systems including, for example, its Zonar Ignition/Ground Traffic Control products that infringe the '535 Patent.

79.     By doing so, Knight-Swift has directly infringed (literally and/or under the doctrine of equivalents) at least Claim 1 of the '535 Patent. *See* Exhibit 7.

80.     Knight-Swift's Zonar Ignition product is an exemplary accused product.

81.     Knight-Swift directly infringed the '535 Patent when, for example, it and/or its agents used the accused products, including during testing of the accused products. Knight-Swift also directly infringed the '535 Patent when the accused products were used after purchase by a customer or end user. For example, the accused products were built with hardware and/or software components that control the operation of the accused products. These components caused the accused products to perform the steps of the claimed invention after, for example, performing diagnostic processes on operations. Knight-Swift also directly infringed the '535 Patent by exercising direction or control over the use of the accused products by others, including its affiliates, its subsidiaries, its business partners (e.g., Zonar, certification/testing providers), and/or its customers and end-users. Knight-Swift contracted with, advised, and encouraged such persons to engage in conduct satisfying one or more elements of the asserted

18

claims, deriving a financial or other benefit (e.g., improved enterprise operations) from doing so. Knight-Swift conditioned these benefits on, for example, such persons performing certain activities involving the accused products during specified conditions that cause the accused products to perform the steps of the claimed method (e.g., improved enterprise operations).

82.    Knight-Swift has had knowledge of the '535 Patent at least as of the date when it was notified of the filing of this action.

83.    Interstate Patents has been damaged as a result of the infringing conduct by Knight-Swift alleged above. Thus, Knight-Swift is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

84.    Interstate Patents has neither made nor sold unmarked articles that practice the '535 Patent, and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '535 Patent.

## ADDITIONAL ALLEGATIONS REGARDING INFRINGEMENT AND PERSONAL JURISDICTION

85.    Knight-Swift has also indirectly infringed the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent by inducing others to directly infringe the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.

86.    Knight-Swift has induced the end users and/or Knight-Swift's customers to directly infringe (literally and/or under the doctrine of equivalents) the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent by using the accused products.

87.    Knight-Swift took active steps, directly and/or through contractual relationships with others, with the specific intent to cause them to use the accused products in a manner that infringes one or more claims of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, including, for example, claim 53 of the '797 Patent, claim 1 of the '864 Patent, claim 1 of the '943 Patent, claim 20 of the '689 Patent, claim 1 of the '737 Patent, claim 1 of the '848 Patent, and claim 1 of the '535 Patent.

88.    Such steps by Knight-Swift included, among other things, advising or directing customers, end users, and others (including distributors and equipment services entities) to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner.

89.    Knight-Swift performed these steps, which constitute joint and/or induced infringement, with the knowledge of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent and with the knowledge that the induced acts constitute infringement.

90.    Knight-Swift was and is aware that the normal and customary use of the accused products by Knight-Swift's customers would infringe the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent. Knight-Swift's inducement is ongoing for the '797 Patent, the '943 Patent, the '689 Patent, the '848 Patent, and the '737 Patent.

91.    Knight-Swift has also induced its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to directly infringe (literally and/or under the doctrine of equivalents) at least claim 53 of the '797 Patent, claim 1 of

the '864 Patent, claim 1 of the '943 Patent, claim 20 of the '689 Patent, claim 1 of the '737 Patent, claim 1 of the '848 Patent, and claim 1 of the '535 Patent by importing, selling or offering to sell the accused products.

92.    Knight-Swift has a significant role in placing the accused products in the stream of commerce with the expectation and knowledge that they will be purchased by consumers in Texas and elsewhere in the United States.

93.    Knight-Swift purposefully directs or controls the making of accused products and their shipment to the United States, using established distribution channels, for sale in Texas and elsewhere within the United States.

94.    Knight-Swift purposefully directs or controls the sale of the accused products into established United States distribution channels, including sales to nationwide retailers, wholesalers, distributors, manufacturers, and design laboratories (including, but not limited to, Knight-Swift's various affiliated and related companies).

95.    Knight-Swift purposefully directs or controls the sale of the accused products online and in nationwide retailers and wholesalers, including for sale in Texas and elsewhere in the United States, and expects and intends that the accused products will be so sold.

96.    Knight-Swift purposefully places the accused products—whether by itself or through subsidiaries, affiliates, or third parties—into an international supply chain, knowing that the accused products will be sold in the United States, including Texas.  Therefore, Knight-Swift also facilitates the sale of the accused products in Texas.

97.    Knight-Swift took active steps, directly and/or through contractual relationships with others, with the specific intent to cause such persons to import, sell, or offer to sell the accused products in a manner that infringes claim 53 of the '797 Patent, claim 1 of the '864

Patent, claim 1 of the '943 Patent, claim 20 of the '689 Patent, claim 1 of the '737 Patent, claim 1 of the '848 Patent, and claim 1 of the '535 Patent.

98.     Such steps by Knight-Swift included, among other things, making or selling the accused products outside of the United States for importation into or sale in the United States, or knowing that such importation or sale would occur; and directing, facilitating, or influencing its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf, to import, sell, or offer to sell the accused products in an infringing manner.

99.     Knight-Swift performed these steps, which constitute induced infringement, with the knowledge of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, and with the knowledge that the induced acts would constitute infringement.

100.     Knight-Swift performed such steps in order to profit from the eventual sale of the accused products in the United States.

101.     Knight-Swift's inducement is ongoing.

102.     Knight-Swift has also indirectly infringed by contributing to the infringement of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.  Knight-Swift has contributed to the direct infringement of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent by the end user of the accused products.

103.     The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the

'535 Patent, including, for example, claim 53 of the '797 Patent, claim 1 of the '864 Patent, claim 1 of the '943 Patent, claim 20 of the '689 Patent, claim 1 of the '737 Patent, claim 1 of the '848 Patent, and claim 1 of the '535 Patent.

104.    The special features include, for example, hardware and/or software components especially adapted for scheduling information with regard to the use of relative grants, receiving information related to an emergency call, uploading images, authenticating alert issuers, analyzing and searching digital image data, providing a current transmission with a bit pattern, and/or specifying a triggering relationship, used in a manner that infringes the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.

105.    These special features constitute a material part of the invention of one or more of the claims of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, and are not staple articles of commerce suitable for substantial non-infringing use.

106.    Knight-Swift's contributory infringement of the '797 Patent, the '943 Patent, the '689 Patent, the '848 Patent, and the '737 Patent is ongoing.

107.    Knight-Swift has had actual knowledge of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent at least as of the date when it was notified of the filing of this action.  Since at least that time, Knight-Swift has known the scope of the claims of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent, the products that practice the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the

'535 Patent, and that Interstate Patents is the owner of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.

108.    By the time of trial, Knight-Swift will have known and intended (since receiving such notice) that its continued actions would infringe and actively induce and contribute to the infringement of one or more claims of the '797 Patent, the '943 Patent, the '689 Patent, and the '737 Patent.

109.    Furthermore, Knight-Swift has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Interstate Patents' patent rights. *See, e.g.*, M. Lemley, "Ignoring Patents," 2008 Mich. St. L. Rev. 19 (2008).

110.    Knight-Swift's customers have infringed the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent.  Knight-Swift encouraged its customers' infringement.

111.    Knight-Swift's direct and indirect infringement of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent has been, and/or continues to be willful, intentional, deliberate, and/or in conscious disregard of Interstate Patents' rights under the patents-in-suit.

112.    Interstate Patents has been damaged as a result of Knight-Swift's infringing conduct alleged above.  Thus, Knight-Swift is liable to Interstate Patents in an amount that adequately compensates it for such infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

Interstate Patents hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

Interstate Patents requests that the Court find in its favor and against Knight-Swift, and that the Court grant Interstate Patents the following relief:

 a. Judgment that one or more claims of the '797 Patent, the '864 Patent, the '943 Patent, the '689 Patent, the '737 Patent, the '848 Patent, and the '535 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Knight-Swift and/or all others acting in concert therewith;

 b. A permanent injunction enjoining Knight-Swift and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringing the '797 Patent, the '943 Patent, the '689 Patent, and the '737 Patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '797 Patent, the '943 Patent, the '689 Patent, and the '737 Patent by such entities;

 c. Judgment that Knight-Swift account for and pay to Interstate Patents all damages to and costs incurred by Interstate Patents because of Knight-Swift's infringing activities and other conduct complained of herein, including an award of all increased damages to which Interstate Patents is entitled under 35 U.S.C. § 284;

 d. That Interstate Patents be granted pre-judgment and post-judgment interest on the damages caused by Knight-Swift's infringing activities and other conduct complained of herein;

 e. That this Court declare this an exceptional case and award Interstate Patents its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

 f. That Interstate Patents be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: February 19, 2026

Respectfully submitted,

*/s/ Zachariah S. Harrington*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Rehan M. Safiullah
Texas Bar No. 24066017
rehan@ahtlawfirm.com
Hannah D. Price
Texas Bar No. 24116921
hannah@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

*Attorneys for Interstate Patents, LLC*